UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Jonathan Fournier,<br><br>                              Plaintiff,<br><br>v.<br><br>Norfolk Southern Railway Company,<br><br>                              Defendant. | Case No. _____<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

### PRELIMINARY STATEMENT

1. For reasons unique to railroad industry, carriers have a financial incentive to retaliate against employees who report injuries. See, e.g., Report of Majority Staff of the Committee on Transportation and Infrastructure Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure, 110th Cong. (Oct. 22, 2007) ("Hearings"). Because carriers have a long history of acting on this motive, Congress amended the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"), to add new prohibitions against railroads, provide employees a private right of action in federal court, and relax the standards of proof for retaliation claims. See The Implementing Recommendations of the 9/11's Comm. Act of 2007, P. L. 110-53, 121 Stat. 444 (Aug. 3, 2007). Courts have recognized that these amendments were intended "to ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers." Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 157 (3d Cir. 2013) (quoting Hearings) (internal quotation marks omitted).

2. Defendant Norfolk Southern Railway Company in particular has a history of retaliating against employees who report injuries, which has continued after Congress amended

the FRSA. This includes against Plaintiff Jonathan Fournier, who was Norfolk Southern's loyal employee up and until he reported the injury he suffered when he was forced to jump from the train he was conducting because a truck was headed right for him. Then, Norfolk Southern claimed Fournier was responsible for the accident and terminated Fournier, even though the truck's driver admitted responsibility.

## PARTIES

3. Norfolk Southern is a railroad carrier engaged in interstate and foreign commerce. It is headquartered in Norfolk, Virginia.

4. Jonathan Fournier worked for Norfolk Southern as a conductor. He resides in Nebraska.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Fournier's FRSA claim under 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because Norfolk Southern is headquartered and the illegal conduct occurred in the Eastern District of Virginia.

## FOURNIER REPORTS A WORK-RELATED INJURY AND IS TERMINATED

7. On June 24, 2016, Fournier was conducting a train P56P124 for Norfolk Southern.

8. When Fournier passed over the crossing at Milepost 14.9, which connects some industrial buildings' parking lots with the local road, a truck ignored the train's right of way and collided with it.

9. Just before the truck struck the train, Fournier saw it and jumped out of the way, successfully avoiding the truck but also injuring his foot.

10. The police were called to the accident and they correctly determined the truck driver was at fault.

11. The truck driver's insurance has admitted liability.

### EMPLOYEES' REPORTING DECISIONS

12. Norfolk Southern believes it can discipline injured employees who have violated any of its workplace rules, and often uses these rules to punish employees who are hurt on the job.

13. At the same time, Norfolk Southern has hundreds of rules, many of which are vague and could apply to almost any incident involving an injury.

14. Consequently, many employees avoid reporting work-related injuries. Not reporting an injury, however, is also a rule violation. Thus, injured employees are caught in a Catch-22: They risk being disciplined if they report their injuries and risk being disciplined if they do not report their injuries.

### FOURNIER REPORTS HIS INJURY, AND NORFOLK SOUTHERN RETALIATES

15. Though he knew it may make him a target for discipline, Fournier immediately reported his injury to his direct supervisor.

16. Pursuant to his union's collective bargaining agreement ("CBA") with Norfolk Southern, Norfolk Southern could not discipline Fournier unless it first charged him with a rule violation and held an investigatory hearing (an internal process whereby the company appoints a hearing officer to take testimony from the employees involved in the alleged workplace rule violation).

17. The hearings are not a neutral forum where an employee's responsibility for a safety violation is fairly and independently determined; rather, they are a perfunctory means to

assign blame to employees regardless of their actual responsibility for safety violations. For example, hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company; hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply and employees are frequently found responsible based entirely on hearsay; the company can compel witnesses to appear but employees cannot; the company conducts an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the charged employee; and the hearings typically take less than one day. Indeed, it is well known that hearings are almost always decided in favor of the railroad.

18. Shortly after Fournier reported his injury, Norfolk Southern charged him with two workplace rule violations, one for seeking treatment for his foot without first getting Norfolk Southern's permission and one for allegedly causing the accident.

19. Norfolk Southern then held an investigatory hearing for each supposed rule violation, through which it learned Fournier was not responsible for the accident and had timely reported seeking medical treatment.

20. Norfolk Southern nevertheless found against Fournier and terminated him.

### NORFOLK SOUTHERN'S RETALIATORY MOTIVE

21. Railroads' motive to discourage workers from reporting injuries includes that they are exempt from Workers' Compensation, which means they are liable to employees whose injuries are caused by its negligence, and the agency responsible for enforcing railroad safety laws—the Federal Railroad Administration ("FRA")—uses the number of reported injuries to determine where it should send its inspectors. See, e.g., Barati v. Metro-N. R.R. Commuter R.R.

Co., 939 F. Supp. 2d 143, 148 (D. Conn. 2013) (quoting the testimony of the former head of the FRA's Office of Safety).

22. Norfolk Southern also ensures that supervisors have a personal motive to discourage their subordinates from reporting workplace injuries by maintaining an incentive compensation plan whereby it pays managers based, in part, on the number of FRA-reportable injuries employees report (with fewer injury reports translating to higher bonuses).

23. Norfolk Southern maintains such an incentive compensation plan despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area." Araujo v. New Jersey Transit Rail Operations, Inc., 708 F.3d 152, 161 n. 7 (3d Cir. 2013) (citing Hearings).

## NORFOLK SOUTHERN'S RETALIATION WAS PURSUANT TO ITS COMPANYWIDE PRACTICES AND POLICIES

24. The workplace rules pursuant to which Fournier was noticed to two hearings and terminated apply companywide.

25. It is a common and companywide practice at Norfolk Southern to use these and its other rules, some of which are vague and essentially incorporate not being injured as an element of the rules themselves, to justify retaliation against employees who report injuries. See, e.g., Thompson v. Norfolk S. Ry. Co., No. 1:13-cv-1555, 2015 WL 1509483, at *8-9 (N.D. Ga. Mar. 31, 2015); Murphy v. Norfolk S. Ry. Co., No. 1:13-cv-863, 2015 WL 914922, at *4-6 (S.D. Ohio Mar. 3, 2015); Cash v. Norfolk S. Ry. Co., No. 6:13-cv-00056, 2015 WL 178065, at *9-12 (W.D. Va. Jan. 14, 2015).

26. Despite these and other numerous FRSA violations, Norfolk Southern has disciplined no supervisors for retaliating against employees for engaging in FRSA-protected activity.

## CAUSES OF ACTION

### VIOLATIONS OF 49 U.S.C. §§ 20109(a)(4)

27. The FRSA prohibits railroad carriers from demoting, suspending, reprimanding, or in any other way discriminating against an employee for engaging in protected activity. Protected activity includes "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury . . . ." 49 U.S.C. § 20109(a)(4).

28. Fournier engaged in protected activity by reporting his injury to Norfolk Southern.

29. Norfolk Southern knew Fournier had engaged in protected activity when it terminated him.

30. Norfolk Southern took an adverse action against Fournier each time it charged him with a workplace rule violation and when it terminated him.

31. Fournier's protected activity was a contributing factor in Norfolk Southern's decision to take adverse actions against him. In fact, the adverse actions against Fournier resulted directly from his protected activity.

### REQUEST FOR RELIEF

32. Fournier requests that the Court find Norfolk Southern acted in direct violation of the FRSA.

33. Fournier further requests that the Court order Norfolk Southern to:

- reinstate him;

- clear and/or expunge any record of misconduct by him regarding the incident described herein;

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount in excess of $75,000.00;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award for $250,000 for punitive damages.

34. Fournier further requests that the Court order judgment against Norfolk Southern for all other relief available under the FRSA and such other relief as the Court deems just and equitable.

DATED: July 20, 2017                             THE MOODY LAW FIRM, INC.

*Willard J. Moody, Jr.* (signature)

Willard J. Moody, Jr. (VSB# 22866)
500 Crawford Street, Suite 200
Portsmouth, VA 23704
Telephone: (757) 393-4093
Facsimile: (757) 397-7257
will@moodyrrlaw.com

**ATTORNEY FOR COMPLAINANT**